**STATE of Iowa, Appellee,**

v.

**Oliver Randall COFFIN, Appellant.**

No. 92–1339.

Supreme Court of Iowa.

Aug. 25, 1993.

**894**

Linda Del Gallo, State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., and Diann Wilder–Tomlinson, County Atty., for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

Is extortion a lesser included offense of second-degree robbery? We hold that it is not and affirm the defendant's conviction.

On the evening of February 23, 1992, Oliver Randall Coffin went to the Kum and Go convenience store in Marshalltown. He left after buying some lottery tickets. He came back a short time later to cash in the winning tickets and play the pinball machine.

Eventually Coffin was alone in the store with the clerk. By his own admission, Coffin had, by now, spent close to $100 on lottery tickets with little success. At this point Coffin asked the clerk if the clerk thought it would be a good idea to split up the money in the cash register and say the store had been robbed. At first the clerk thought Coffin was joking. Coffin persisted and finally asked the clerk if he thought the money in the register was worth his life. Coffin then put his hand in his jacket as he made this threat, leading the clerk to think Coffin was armed. Coffin then told the clerk he did not want to shoot him.

At this point the clerk opened the register and gave Coffin some money in a sack. Coffin reached over the counter and took some rolls of coins. Coffin then left the store and drove away. As Coffin was leaving, the clerk called 911 and reported the robbery. The clerk identified Coffin from a photo array within hours of the robbery. Coffin eventually turned himself in.

Coffin was charged with second-degree robbery. *See* Iowa Code §§ 711.1, 711.3 (1991). At the close of all the evidence, Coffin's lawyer asked the district court to submit extortion to the jury as a lesser included offense of second-degree robbery. The State resisted and the court denied the request.

The jury found Coffin guilty of second-degree robbery. Following his conviction and sentencing, Coffin appealed, claiming the district court erred when it refused to submit extortion as a lesser included offense.

Our review is for errors at law. Iowa R.App.P. 4.

■ The impossibility test is the paramount consideration in determining the submissibility of lesser included offenses. That test is whether the greater offense cannot be committed without also committing all elements of the lesser offense. The legal or elements test comes into play

as an aid in applying the impossibility test and is fully subsumed in it. *State v. Turecek,* 456 N.W.2d 219, 223 (Iowa 1990). Under the legal or elements test

> if the lesser offense contains an element not required for the greater offense, the lesser cannot be included in the greater.... In using this test, we look to the statutory elements rather than to the charge or the evidence.

*State v. Jeffries,* 430 N.W.2d 728, 740 (Iowa 1988).

██ In a jury case, the district court first looks to the marshaling instruction in determining whether a particular lesser crime must be submitted as a lesser included offense of the crime charged. *Turecek,* 456 N.W.2d at 223. The district court must decide "whether if the elements of the greater offense are established, in the manner in which the State has sought to prove those elements, then the elements of any lesser offense have also necessarily been established." *Id.* And it is not necessary that the elements of the lesser offense be described in the statutes in the same way as the elements of the greater offense. *Id.*

██ In the marshaling instruction on second-degree robbery, the district court submitted the following elements:

1. The defendant had the *specific intent to commit a theft.*

2. In carrying out his intention or to assist him in escaping from the scene, with or without the stolen property, the *defendant threatened another with* or purposely put another in fear of *immediate serious injury.*

(emphasis added); *see also* Iowa Code §§ 711.1 and 711.3 (second-degree robbery has three alternatives).

The elements of extortion closest to the way second-degree robbery was submitted are:

1. *The defendant threatened to inflict physical injury.*

2. The *defendant intended to communicate the threat toward the victim.*

3. *The threat was made for the purpose of obtaining something of value* for the defendant or another.

*See* Iowa Code § 711.4 (extortion has seven alternatives) (emphasis added).

Comparing the italicized elements of the two offenses, we conclude that under the marshaling instruction for second-degree robbery as given here, all of the elements of robbery coincide with all of the elements of extortion. Because of the manner in which the jury was instructed on second-degree robbery, it is not possible to commit that offense without also committing extortion.

### Intent to Commit Theft Versus For the Purpose of Obtaining Something of Value

Comparing element one of second-degree robbery with element three of extortion, we note that "intent to commit" coincides with "for the purpose of." Both connote specific intent. And "theft" coincides with "obtaining something of value." Briefly, theft involves taking *property* belonging to another. *See* Iowa Code § 714.1. The key word is property. Our criminal code defines property, in part, as "anything of value." *See* Iowa Code § 702.14. Obviously, "anything of value" is broad enough to include "something of value."

### Defendant Threatened Another With Immediate Serious Injury Versus Defendant Threatened to Inflict Physical Injury

Comparing element two of second-degree robbery with element one of extortion, we again note a match up of elements. Threatening someone with immediate serious injury can include threatening someone with physical injury. The threat for extortion is not limited in time. It can be *immediate* or in the future.

Serious injury includes "disabling mental illness, or bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Iowa Code § 702.18. Bodily injury generally re-

fers only to an injury to the body. Blacks Law Dictionary 175 (6th ed. 1990). Physical injury is also an injury to the body. *Id.* at 1147. Physical injury in extortion is not limited in any degree. It can be nonpermanent and nonlife threatening or it can be just the opposite. Under these definitions, it is clear that "serious injury" in second-degree robbery as submitted can include "physical injury" in extortion.

### Defendant Threatened Another Versus Defendant Threatened and Defendant Intended to Communicate the Threat Toward the Victim

Comparing element two of second-degree robbery with elements one and two of extortion, we again have a match up. Threatening another can include threatening and intending to communicate that threat to the victim.

The exact match up in elements is, on reflection, not surprising in view of the historical development of both crimes and our statutory definition of extortion. On the historical point two noted treatise writers had this to say:

> We have seen, in the discussion of robbery, that to obtain another's property by means of a threat of immediate bodily harm to the victim (or to someone in his company) is robbery.... [T]he severe penalty for robbery, long a capital offense, restrained the courts from expanding robbery to include the acquisition of property by means of other effective threats—such as a threat to inflict *future* rather than *immediate* bodily harm.... To fill this vacuum practically all states have enacted statutes creating what is in effect a new crime—in some states called statutory extortion, in others blackmail, and generally carrying a penalty less severe than for robbery.

Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 95, at 704–05 (1972) (emphasis added). So, in reality, statutory extortion is closely related to robbery because it was created to plug a loophole in robbery by covering various threats that would not do for robbery. *Id.* at 707. The similarity between the two offenses is underscored by the inclusion of both in the same chapter of the Iowa Code.

It seems the main historical difference between robbery and extortion is that robbery was limited to immediate threats whereas extortion was limited to future threats. Under our extortion statute, however, extortion is not limited to future threats; it can include—like robbery—immediate threats. That perhaps explains what appears to be at first blush an anomaly, that is, the similarity between extortion and robbery.

■ The foregoing analysis, however, does not answer our question whether extortion is a lesser included offense of robbery as submitted in this case. Our legal or elements test requires that the lesser offense be composed solely of some *but not all of the elements of the greater offense.* *Jeffries,* 430 N.W.2d at 736. In short, the greater offense *must* have an element not found in the lesser offense. Without such a dissimilar element, it is not proper to submit a lesser included offense. We said as much in *Jeffries:*

> [W]e hold that Iowa trial courts shall no longer be required to review the record to determine whether there is sufficient evidence to support a verdict for a lesser-included offense. Except in two instances, they shall automatically instruct on a lesser-included offense if the legal test is met as to a greater offense that has support in the evidence.
>
> *One exception to the automatic instruction rule is when the defendant stipulates to the dissimilar element of the greater offense. Logically, in these rare cases, the evidence is conclusive that no lesser-included offense was committed.*

*Jeffries,* 430 N.W.2d at 737.

Here we have no dissimilar element in the greater offense. All of the elements of robbery as submitted coincide with all of the elements of extortion. So the district court correctly refused to submit extortion as a lesser included offense.

In a similar situation, the United States Supreme Court has held, under the federal

legal or elements test, that it is not proper to give a lesser included offense instruction. *See Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). The Court reasoned that "to hold otherwise would only invite the jury to pick between [the more serious and less serious offense], a duty Congress has traditionally left to the judge." *Id.* at 350, n. 6, 85 S.Ct. at 1009, n. 6, 13 L.Ed.2d at 888, n. 6. We would only add to the reasoning that to hold otherwise would also infringe upon prosecutorial discretion as to which charge to file.

**AFFIRMED.**