**STATE of Iowa, Appellee,**

v.

**Dee Daniel HICKMAN, Appellant.**

No. 99–1576.

Supreme Court of Iowa.

March 21, 2001.

Linda Del Gallo, State Appellate Defender, and James G. Tomka, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kristin Mueller, Assistant Attorney General, William E. Davis, County Attorney, and Robert Weinberg, Assistant County Attorney, for appellee.

LARSON, Justice.

Dee Daniel Hickman was convicted and sentenced for first-degree robbery and willful injury, and the court of appeals affirmed. On further review, we vacate the decision of the court of appeals and affirm the conviction of first-degree robbery. We vacate the sentence for willful injury, which was merged in first-degree robbery, and remand the case for entry of an order dismissing the willful injury charge.

## I. *Facts.*

On April 6, 1998, Hickman and three other men met to make plans to rob a man named John Thorpe by taking marijuana from him. Hickman made several telephone calls to Thorpe to arrange a meeting to "buy" the marijuana. During the phone conversations, Hickman asked

Thorpe if he would be alone, and Thorpe assured him he would be. Hickman told the others they would not need money for the marijuana because they would just take it. One of the men, Marcus Gay, agreed to sit in the front seat with Thorpe and hit him while the others took the marijuana.

When the men arrived at the rendezvous site, Hickman got in the backseat of Thorpe's car and sat directly behind Thorpe. Gay sat in the front passenger seat next to Thorpe. Thorpe weighed the marijuana on a scale on the passenger side floor. When Thorpe sat up, he felt what he thought was a gun in his ear. One of the men told him he was being "jacked." Gay hit Thorpe in the face, and Thorpe reached for a gun under his left thigh but decided to let go of it because he was afraid he would be shot. Even though Thorpe released his weapon, Hickman shot him in the back of the head. The bullet entered Thorpe's head near his right ear and exited through the roof of his mouth, but he survived.

According to a witness who saw the men after the event, Hickman and Gay had guns, and one of the other men had the marijuana in a plastic bag. The men appeared jumpy and nervous, and Hickman warned the witness not to talk about the incident.

On May 20, 1999, the State charged Hickman with first-degree robbery under Iowa Code section 711.2 (1997) (count I), attempted murder under section 707.11 (count II), willful injury under section 708.4 (count III), and assault while participating in a felony under section 708.3 (count IV). A jury found him guilty of first-degree robbery and willful injury. On the charge of attempted murder, the jury found Hickman guilty of the lesser included offense of assault with intent to inflict serious injury. At sentencing, the district court merged the assault into the willful injury conviction. Hickman was sentenced to an indeterminate twenty-five-year prison term for first-degree robbery and an indeterminate ten-year prison term for willful injury, with the sentences to run consecutively. Hickman did not object at trial or at sentencing to the court's failure to merge willful injury into the first-degree robbery conviction, the subject of this appeal.

## II. The Issues.

Hickman raises two issues: (1) sufficiency of the evidence and (2) failure of the court to merge willful injury into the robbery conviction as required by Iowa Code section 701.9.

## III. Sufficiency of the Evidence.

 We review a jury verdict for substantial evidence. In deciding whether the evidence is substantial, we view the evidence in the light most favorable to the State and make all reasonable inferences that may fairly be drawn from the evidence. As such, a challenge of the sufficiency of the evidence is for correction of errors at law. Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence. Consequently, where the record contains substantial evidence, we are bound by the jury's finding of guilt. *State v. Button,* 622 N.W.2d 480, 483 (Iowa 2001) (citations omitted). Viewed in the light most favorable to the verdict, the evidence of Hickman's guilt was overwhelming. He planned the "jacking" and called the victim to arrange it, making sure the victim would be alone. Hickman took a gun and used it when the victim showed his own gun. Although Hickman contends he shot the victim in self-defense, the facts, including Hickman's shooting the victim in the back of the head, tend to belie that

scenario. In any event, the jury found Hickman guilty, and that verdict is supported by substantial evidence. We reject his sufficiency-of-the-evidence argument.

### IV. *Merger.*

The court submitted willful injury to the jury in two ways: as an included offense in first-degree robbery under instruction No. 39 and as a stand-alone offense under instruction No. 44. The jury found him guilty of both first-degree robbery and willful injury.

■ The defendant argues that willful injury should have been merged into the first-degree robbery conviction under Iowa Code section 701.9. The State responds that Hickman failed to object at trial or at sentencing to the court's failure to merge the offense, so the argument has been waived. Hickman rejoins in two ways: (1) the sentence for willful injury was void, so normal rules of error preservation and waiver are not applicable, and (2) the State failed to object to the court's robbery instruction under which willful injury was listed as an included offense, so merger became the law of the case. Because we resolve the merger issue on the first ground, it is not necessary to address the defendant's law-of-the-case argument. *See State v. Halliburton,* 539 N.W.2d 339, 343 (Iowa 1995) (holding a sentence that is contrary to Iowa Code section 701.9 is void and therefore the court's error in imposing sentence is not subject to normal rules of error preservation and waiver).

Under our merger statute,

[n]o person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty on the greater of the offenses only.

Iowa Code § 701.9.

■ The issue of whether, under the statute, willful injury is "necessarily in-cluded" in first-degree robbery is the principal issue on appeal. In determining whether a lesser offense is included in a greater one, we look to the elements of each and determine if the greater offense can be committed without also committing the lesser offense. If the greater offense cannot be committed without also committing the lesser offense, the lesser is included in the greater. We call this the "impossibility" test. *See State v. Coffin,* 504 N.W.2d 893, 894 (Iowa 1993). The so-called "elements" test for included offenses is applied only as an aid in using the impossibility test and is fully subsumed in it. *Id.* at 894–95. In applying the impossibility test, we first decide

"whether if the elements of the greater offense are established, in the manner in which the State sought to prove those elements, then the elements of any lesser offense have also necessarily been established." And it is not necessary that the elements of the lesser offense be described in the statutes in the same way as the elements of the greater offense.

*Id.* at 895 (quoting *State v. Turecek,* 456 N.W.2d 219, 223 (Iowa 1990)).

■ Under instruction No. 37, the court listed the elements of robbery in the first degree:

1. On or about the 6th day of April, 1999, the defendant Dee Daniel Hickman, or someone he aided and abetted, had the specific intent to commit a theft.

2. To carry out this intention . . . the defendant, or someone he aided and abetted:

 a. Committed an assault . . . on John Eugene Thorpe; or

 b. Threatened John Eugene Thorpe with, or purposely put John Eugene Thorpe in fear of immediate serious injury; or

 c. Threatened to immediately commit willful injury . . . .

3. The defendant, or someone he aided and abetted:

 a. *Purposely inflicted or attempted to inflict a serious injury on John Eugene Thorpe*; or

 b. Was armed with a dangerous weapon.

(Emphasis added.)

The marshaling instruction for willful injury, No. 39, listed the elements of that crime:

1. On or about the 6th day of April, 1999, the defendant, or someone he aided and abetted, shot John Eugene Thorpe in the head.

2. The defendant, or the person he aided and abetted, specifically *intended* to cause a serious injury to John Eugene Thorpe.

3. John Eugene Thorpe sustained a serious injury.

4. Neither the defendant nor any person he aided and abetted was justified in their actions.

(Emphasis added.)

■ If the greater offense is defined alternatively and the State charges both alternatives, the test for included offenses must be applied to each alternative. *See State v. Johnson,* 328 N.W.2d 918, 920 (Iowa 1983); *State v. Pettyjohn,* 436 N.W.2d 65, 68 (Iowa Ct.App.1989). Here, the pertinent alternative for committing first-degree robbery, as instructed by the court, is that the defendant "purposely inflicted or attempted to inflict a serious injury on John Thorpe." *See* Iowa Code § 711.2 (listing alternative means for committing first-degree robbery). On the other hand, willful injury requires proof the defendant "intended to cause ... serious injury." Iowa Code § 708.4. The State argues the word "purposely" under the first-degree robbery statute does not equate with "intended" under the willful-

injury statute. According to the State, "intended" is a specific-intent element; "purposefully," on the other hand, has been held to be a general-intent element. *See State v. Neuzil,* 589 N.W.2d 708, 711 (Iowa 1999).

It is true, as the State argues, we said in *Neuzil* that "purposefully" engaging in certain conduct was a general-intent element. Under *Neuzil* the crime of stalking is established if

> [t]he person purposefully engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to, or the death of, that specific person or a member of the specific person's immediate family.

*Id.* at 710. In *Neuzil* we said "[t]he statute's focus is not on the defendant's mental state but on the result defendant's purposeful acts cause in a reasonable person," concluding:

> We agree with the State's contention that if the Iowa legislature intended to make stalking a specific-intent crime, it would have defined the offense as a course of conduct "intended to place" the victim in reasonable fear of bodily injury or death. In the absence of such express terminology, we presume the legislature intended to criminalize the proscribed act itself, without further proof related to the defendant's subjective desires.

*Id.* at 711 (citation omitted).

■ Whether an intent or purpose requirement connotes general or specific intent depends on the context in which the words appear. *See Neuzil,* 589 N.W.2d at 711 ("[T]he determination of whether a statute requires general or specific intent turns on the language of the act, read in the light of its manifest purpose and design."). Similarly, in *State v. Royer,* we held the reckless use of fire was an includ-

ed offense in first-degree arson, which required a showing that the defendant "caused" a fire. We said, *"[i]n the context of the statutes,* both terms ['causing' fire and 'using' fire] required the utilization of fire with intent to harm or endanger." 436 N.W.2d 637, 641–42 (Iowa 1989) (emphasis added).

In *State v. Waller,* the issue was whether "intent" under our burglary statute was sufficiently similar to the word "purpose" under our criminal trespass statute to make criminal trespass an included offense of burglary. We concluded it was:

> Intent has been defined as the design or purpose of an individual in acting. Thus, the word "purpose" as contained in section 716.7(2)(c) is synonymous with "intent." Although the words are different, the thought conveyed in these contexts is the same. A person whose act evidences intent to commit a felony, assault, or theft under the burglary statute necessarily has also evinced the purpose of unduly interfering with the use of the property by others. Thus, it is impossible to commit the greater offense without committing the lesser offense. As a result, the offense of burglary under the entering alternative cannot be committed without also committing criminal trespass pursuant to section 716.7(2)(c).

*State v. Waller,* 450 N.W.2d 864, 866 (Iowa 1990) (citations omitted).

Applying the pragmatic approach of *Waller* and *Royer,* we conclude the words "purposely inflicts . . . a serious injury" under the first-degree robbery statute and "intended to cause . . . serious injury" under the willful-injury statute, convey the same thought: the defendant intended to cause serious injury to the victim (specific intent), not just to do the act that resulted in serious injury (general intent). Under this analysis, it is impossible to commit first-degree robbery under the purposely-

inflicts-serious-injury alternative without also committing willful injury.

The two offenses are therefore merged under Iowa Code section 701.9, and the separate judgment and sentence for willful injury must be vacated. Because we have resolved the merger issue on the basis of Iowa Code section 701.9, we do not address Hickman's alternative argument that merger became the law of the case.

We vacate the decision of the court of appeals, affirm the judgment and sentence for first-degree robbery, vacate the judgment and sentence for willful injury, and remand the case for entry of an order dismissing the willful injury charge.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT AND SENTENCE FOR FIRST–DEGREE ROBBERY AFFIRMED; JUDGMENT AND SENTENCE FOR WILLFUL INJURY VACATED; CASE REMANDED FOR ENTRY OF AN ORDER DISMISSING WILLFUL INJURY CHARGE.**