# IN THE COURT OF APPEALS OF IOWA

No. 19-1605
Filed December 16, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ANTONIO J. COOKS,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Muscatine County, Henry W. Latham II, Judge.


Defendant appeals his conviction for robbery in the second degree.
**AFFIRMED.**


Lauren M. Phelps, Hudson, Florida, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.


Considered by Mullins, P.J., Schumacher, J., and Danilson, S.J.* Tabor, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCHUMACHER, Judge.**

Antonio Cooks appeals his conviction for robbery in the second degree. Cooks failed to show the jury's verdict was not supported by substantial evidence or that it was contrary to the weight of the evidence. Cooks did not preserve error on his claim concerning the jury instructions, and therefore, we do not address this issue. Cooks did not preserve error on his claim that the jury venire did not represent a fair cross-section of the community. Finally, Cooks has not shown the State engaged in purposeful discrimination in exercising peremptory challenges, and we conclude he is not entitled to a new trial based on his claims under *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). We affirm Cooks's conviction.

### I.       Background Facts & Proceedings

On April 6, 2019, Adam Cale and John Mack were working at O'Reilly Auto Parts in Muscatine. At about 8:40 p.m., a man who was wearing a black ski mask with a single opening for the eyes and a black hoodie came into the store holding a gun. Cale testified "there could have been stripes" on the sleeves of the hoodie. Mack testified the black hoodie had white stripes on the cuffs and the bottom of the sweatshirt. The man ordered the employees to place two cash register tills into a bag, and they complied. The man instructed the employees to move to the back of the store and then the man quickly exited. Cale called 911, and Mack pressed the panic alarm.

State Trooper David Saldivar was driving in the area and saw a man run across the road toward a Travelodge Motel. The man was carrying a bag and wearing a black hoodie. Trooper Saldivar asked the man why he was running, and the man replied he did not know. Trooper Saldivar parked at a nearby Burger King

but then saw officers pull up to O'Reilly Auto Parts, so he went over there and informed the officers about the man he saw running toward the Travelodge.

Due to a miscommunication, officers initially believed the suspect was running toward the Sycamore Estates Apartments, which was near the Travelodge. The miscommunication was soon sorted out. Officers described the person they were seeking to the desk clerk at the Travelodge and were informed a person meeting that description was in Room 132. The officers went to the room and found Cooks. After obtaining a search warrant, officers found a black ski mask with a single eye opening and a black hooded sweatshirt with white stripes on the cuffs and bottom. The sweatshirt had the word "Marines" and a picture of an eagle on the back. Officers observed a video from a motel security camera showing Cooks walking into Room 132 carrying something black.

The officers also searched Cooks's vehicle and found boxes of Crosman $CO_2$ cartridges, along with documents addressed to Cooks. Officers observed a bag in the open bed of a pickup parked near Cooks's vehicle that had a black BB gun in it. The gun contained a Crosman $CO_2$ cartridge. The bag also contained two cash register tills.

Cooks was charged with robbery in the second degree, in violation of Iowa Code section 711.3 (2019), a class "C" felony. Cooks waived his right to counsel, stating he wanted to represent himself. The court engaged in an extensive colloquy with Cooks and determined the waiver was knowing, voluntary, and intelligent. Cooks agreed to the assistance of stand-by counsel. The court denied Cooks's motion to suppress.

The jury trial commenced on July 8, 2019. Cooks waived the reporting of jury selection. The court noted for the record that Cooks agreed to release the only Black prospective juror. Cook stated that he agreed to release her due to her health concerns. At the close of the State's evidence and at the close of Cooks's case, the court denied Cooks's motions for judgment of acquittal and motion for directed verdict. Cooks did not raise any objections to the jury instructions. The jury found Cooks guilty of second-degree robbery.

Cooks filed a motion for new trial, which was denied by the district court. Cooks was sentenced to a term of imprisonment not to exceed ten years. He appeals his conviction.[1]

## II.    Sufficiency of the Evidence

Cooks claims there is insufficient evidence in the record to support his conviction. He states there is not substantial evidence to link him to the offense. He points out that his sweatshirt had the word "Marines" and a picture of a large eagle on the back and no one testified they saw this. Also, he notes that there was initially some evidence a person ran to the Sycamore Estates Apartments, rather than the Travelodge, where officers found him. Additionally, he highlights the fact the proceeds from the robbery were not discovered in his possession.

In regard to claims challenging the sufficiency of the evidence, the Iowa Supreme Court has stated:

> Sufficiency of the evidence claims are reviewed for corrections of errors at law. In making determinations regarding the sufficiency of the evidence, we "view the evidence in the light most favorable to the state, regardless of whether it is contradicted, and every reasonable inference that may be deduced therefrom must be considered to

---

[1] Cooks is represented by appellate counsel.

> supplement that evidence." If the record contains substantial evidence to support the defendant's conviction, we will uphold a trial court's denial of a motion of acquittal. "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." Evidence can be either circumstantial or direct, or both. Evidence is substantial if a reasonable trier of fact would be convinced that the defendant is guilty beyond a reasonable doubt.

*State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019) (citations omitted).

We determine there is substantial evidence in the record to show Cooks was the person who robbed O'Reilly Auto Parts on April 6, 2019. The two employees stated the man was wearing a black ski mask with one eye opening. A ski mask matching this description was found in Cooks's motel room. The man was wearing a black hoodie with white stripes on the sleeves. A black hoodie with white stripes on the cuffs and around the bottom was found in Cooks's motel room. The man who robbed the store had a black gun. A black BB gun was found in the bed of a pickup truck parked near Cooks's vehicle. Cooks's vehicle contained boxes of $CO_2$ cartridges of the same brand as the $CO_2$ cartridge in the gun. Documents addressed to Cooks were in a bag with the boxes of $CO_2$ cartridges, linking Cooks to the $CO_2$ cartridges, which also then linked him to the BB gun. The BB gun was found with two cash register tills, further linking Cooks to the robbery.

The store employees and Trooper Saldivar testified they did not see the person's back, so they would not have seen the word "Marines" or the picture of an eagle on the back of the person's sweatshirt. Additionally, the officers testified the confusion about whether the person had been running to the Sycamore Estates Apartments or the Travelodge was caused because the communication system used by Trooper Saldivar was incompatible with the system used by local police

officers. The officers soon determined Trooper Saldivar had seen the person running toward the Travelodge, not the apartment complex.

Considering the evidence in the light most favorable to the State, there is substantial evidence in the record to support the jury's verdict finding Cooks guilty of second-degree robbery. We conclude the district court did not err in denying Cooks's motions for acquittal and directed verdict.

### III. Motion for New Trial

Cooks asserts the district court should have granted his motion for a new trial. He claims the jury's verdict is contrary to the weight of the evidence. Cooks contends the evidence does not show he was the person who robbed O'Reilly Auto Parts.

A defendant is entitled to a new trial when a verdict is contrary to the weight of the evidence. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). "The motion [for new trial] is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* (quoting 3 Charles A. Wright, *Federal Practice and Procedure* § 553, at 245-48 (2d ed.1982)). A court should exercise its power to grant a new trial "carefully and sparingly." *Id.*

We conclude the district court did not abuse its discretion by denying Cooks's motion for a new trial. The jury's verdict was not contrary to the weight of the evidence. The greater weight of the evidence supported a finding that Cooks was the person who entered O'Reilly Auto Parts with a gun and demanded the

cash register tills.  We find the district court did not abuse its discretion in denying Cooks's motion for a new trial.

### IV.    Jury Instructions

Cooks claims the district court improperly instructed the jury on third-degree robbery.  He concedes that he did not object to the instructions, so ordinarily, error would not be preserved.  *See State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006) (noting "timely objection to jury instructions in criminal proceedings is necessary to preserve alleged error for appellate review").  Cooks claims he should come within the exception to the error preservation rule for void or illegal sentences.  *See State v. Gross*, 935 N.W.2d 695, 698 (Iowa 2019) (stating the rule of error preservation is not applicable to void or illegal sentences).  Cooks's claims concerning the jury instructions do not raise a claim about an illegal sentence.  *See Nelson v. State*, No. 13-0159, 2016 WL 1687964, at *2 (Iowa Ct. App. Apr. 27, 2016) (finding a claim of flawed jury instructions did not raise concerns about an illegal sentence). We conclude Cooks does not come within the exception to the rule of error preservation for illegal or void sentences.

Cooks also asserts that we should adopt the plain error rule, which would permit a discussion of the merits of his claim.  We recently stated:

> As a last resort, [the defendant] invites us to adopt the plain-error rule doctrine and apply it to his claim.  We decline.  Our supreme court has repeatedly refused to adopt the plain-error doctrine.  *See, e.g.*, *State v. Martin*, 877 N.W.2d 859, 866 (Iowa 2016) (noting the supreme court has "repeatedly declined 'to abandon our preservation of error rules in favor of a discretionary plain error rule'" (citation omitted)).

*State v. Vice*, No. 19-1068, 2020 WL 2062108, at *2 n.4 (Iowa Ct. App. Apr. 29, 2020).  It is the prerogative of the Iowa Supreme Court to determine the law in

Iowa, and we follow the supreme court's precedent. *State v. Martin*, No. 01-1525, 2002 WL 1767138, at *1 (Iowa Ct. App. July 31, 2002). The plain error rule has not been adopted in Iowa. *Martin*, 877 N.W.2d at 866.

Cooks has not preserved error on his claim concerning the jury instructions, and therefore, we do not address it.

**V.    Jury Panel**

**A.    Fair Cross-Section of the Community**. Cooks contends the jury panel did not represent a fair cross-section of the community. He states he is a Black person and there were not any Black people on the jury panel. "[T]he Sixth Amendment 'right to an impartial jury entitles the criminally accused to a jury drawn from a fair cross-section of the community.'" *Lilly*, 930 N.W.2d at 299 (quoting *State v. Plain*, 898 N.W.2d 801, 821 (Iowa 2017)). A defendant can establish a prima facie violation of the fair-cross-section requirement by showing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). The requirement of a fair cross-section of the community applies to the jury venire, not the jury panel that hears the case. *See State v. Moore*, 469 N.W.2d 269, 272 (Iowa Ct. App. 1991).

Cooks never challenged the composition of the jury venire or the jury panel, so the issue has not been preserved for our review. *See State v. Gibbs*, 941 N.W.2d 888, 900 n. 7 (Iowa 2020) (noting the defendant's claim the jury did not

represent a fair cross-section of the community had not been preserved because he did not raise an objection at the time of trial).

Cooks claims he raised the issue indirectly in a motion for change of venue filed prior to trial, on May 31, 2019. Cooks stated he did not believe he could get a fair trial in Muscatine County concerning a robbery charge involving two white clerks due to pretrial publicity. The State resisted the motion, stating, "The defendant has made no showing that there is a substantial likelihood that a fair and impartial jury cannot be found in Muscatine County." The district court denied the motion, stating Cooks did not show there was such prejudice in Muscatine County that he could not have a fair and impartial trial.

Cooks's motion did not allege that the representation of Black people in venires from which juries were selected was not fair and reasonable in relation to the number of Black people in the community or, if there was underrepresentation, this was due to systematic exclusion of Black people in the jury-selection process. *See Duren*, 439 U.S. at 364. We determine Cooks's motion for change of venue did not sufficiently raise the issue he now raises on appeal.

Cooks additionally asserts that he raised the issue in his motion for new trial. Cooks's motion for a new trial raised a *Batson* challenge to the jury panel but did not raise an issue concerning whether the jury venire represented a fair cross-section of the community. "A motion for a new trial ordinarily is not sufficient to preserve error where proper objections were not made at trial." *State v. Constable*, 505 N.W.2d 473, 477 (Iowa 1993). We conclude Cooks has not preserved error on his claim that the jury did not represent a fair cross-section of the community.

**B.     Batson Claim**. On appeal, Cooks also raises a *Batson* challenge to the jury panel. "In *Batson* the United States Supreme Court held that the equal protection clause of the fourteenth amendment prevents a prosecutor from using peremptory strikes to challenge potential jurors 'solely on account of their race.'" *State v. Griffin*, 564 N.W.2d 370, 375 (Iowa 1997) (quoting *Batson*, 476 U.S. at 89). In order to establish a prima facie case of purposeful discrimination, a defendant must show "he [or she] is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 476 U.S. at 96.

Cooks waived reporting of voir dire. The district court, however, elected to make a record of one incident. The court stated there was one Black prospective juror and Cooks agreed to release her due to her health concerns. Cooks stated on the record that he agreed to release the juror. The court then asked, "Mr. Cooks, do you know of any matters that we need to discuss," and he replied, "No, sir, Your Honor." Cooks did not raise a *Batson* claim at the time of jury selection. *See Wright v. State*, No. 16-0275, 2017 WL 1401475, at *2 (Iowa Ct. App. Apr. 19, 2017) (noting a party who had raised a *Batson* objection at the trial court level had preserved error on the issue).

Cooks claims he sufficiently raised the issue in his motion for new trial, where he specifically mentioned *Batson*, claiming there were no Black people on the jury panel and he felt he had been prejudiced. The State resisted the motion, noting, "Looking at the reasons stated in the record as to why the potential juror was struck for cause the State does not believe that the defendant can meet the

requirements for a successful *Batson* challenge." The district court denied the motion for new trial, finding,

> Mr. Cooks was in support of releasing the African-American juror that was released. It was with his full support that that juror was released. It should also be stated for the record that there was no sufficient reasons to address any type of *Batson* challenge during the selection of the jury.

Cooks has not alleged nor proven "that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *See Batson*, 476 U.S. at 96. The removal of the Black juror from the jury panel was with Cooks's full acquiescence. He has not shown the State engaged in purposeful discrimination. We conclude Cooks is not entitled to a new trial based on his claims under *Batson*.

We affirm Cooks's conviction for second-degree robbery.

**AFFIRMED.**